IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMBROSE JUNIOR SAMPLE, II, EC-2174, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:05-cv-1277 |
| | ) |
| SUPERINTENDENT DAVID | ) Judge Thomas M. Hardiman |
| DIGUGLIELMO, et al., | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

The subject of this Memorandum Opinion is a petition for writ of habeas corpus filed by Petitioner Ambrose Junior Sample, II (Sample). In a Report and Recommendation dated October 28, 2005, Magistrate Judge Robert C. Mitchell recommended that Sample's petition be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue. The Court agrees with Magistrate Judge Mitchell's Recommendation, but writes separately to expound upon the reasons why the Recommendation should be adopted.

I.  **Factual Background**

Petitioner Sample, an inmate at the State Correctional Institution at Graterford, executed his petition for a writ of habeas corpus on September 1, 2005 and filed it on September 13, 2005. In an Order dated September 19, 2005, the Respondents were directed to answer and show cause, if any, why the relief sought should not be granted. Respondents answered Sample's petition on October 26, 2005, arguing that it should be denied in its entirety.

After a trial in the Court of Common Pleas of Westmoreland County, a jury convicted Sample of third degree murder and he was sentenced to a twelve to twenty-five year sentence on December 6, 1999. Sample appealed his conviction and sentence and submitted the following claims of error to the Superior Court:

I. Whether the trial court erred in admitting the autopsy report into evidence over objection of defense counsel when the pathologist already testified at trial and there was information in the autopsy report that the pathologist did not testify about;

II. Whether trial counsel was ineffective for failing to request that the trial court dismiss a juror who during the course of the trial had contact with a witness who was a friend of the appellant and the juror told the trial court that said contact made her very nervous;

III. Whether the verdict of third degree murder against the appellant was against the weight of the evidence offered at the trial of this matter; and

IV. Whether trial counsel was ineffective for failing to object to the preliminary hearing testimony of Shermaine Alford being read to the jury.

On March 13, 2001, the Superior Court affirmed the judgment of sentence, and on August 8, 2001, the Pennsylvania Supreme Court denied Sample's petition for allowance of appeal.

Sample submitted a post-conviction petition to the Court of Common Pleas of Westmoreland County on May 13, 2002, which was dismissed on November 21, 2002. In his post-conviction appeal to the Superior Court, Sample presented the following issues:

1. Whether the Commonwealth's closing argument deprived Defendant of due process.

2. Whether trial and appellate counsel provided ineffective assistance by failing to allege prosecutorial misconduct regarding the Commonwealth's closing argument.

On January 5, 2005, the Superior Court affirmed the denial of post-conviction relief. Sample's petition for allowance of appeal to the Pennsylvania Supreme Court was denied on August 23, 2005.

In his petition now pending before this Court, Sample claims entitlement to habeas relief because:

1. His Sixth Amendment rights w[ere] violated by permitting the autopsy report of the victim prepared by Dr. Leon Rozin to be viewed by the jury during the Commonwealth's closing argument and jury deliberations; and

2. The Commonwealth's closing argument deprived him of due process as guaranteed by Article I, Section 9, of the Constitution of the Commonwealth of Pennsylvania and the Fifth and Fourteenth Amendments of the Constitution of the United States, in that it expressed the Assistant District Attorney's personal opinion and inflamed the passion of the jury.

**II.   Analysis**

Federal law requires that a habeas petitioner must exhaust state court remedies before seeking federal review:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

28 U.S.C. §2254(b). *See also Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973); *Doctor v. Walters*, 96 F.3d 675 (3d Cir. 1996). Thus, a petitioner is relieved of the exhaustion requirement only when he shows that the available corrective process would be ineffective. *Preiser*, 411 U.S. at 483; *Walker v. Vaughn*,

3

53 F.3d 609, 614 (3d Cir. 1995). When viable state court remedies exist, the court must determine whether a procedural default has occurred. When a procedural default has occurred, the petition must be denied unless (1) cause or prejudice exists for the default, or (2) whether a fundamental miscarriage of justice would result from a failure to consider the claims. *Carter v. Vaughn*, 62 F.3d 591 (3d Cir. 1995).

In construing §2254(d)(1), the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000), stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Interpreting the Supreme Court's decision in *Williams v. Taylor*, the Court of Appeals for the Third Circuit wrote in *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000):

> The Court in *Williams v. Taylor* held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor* further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

4

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in *Williams v. Taylor* made it clear that the "contrary to" and "unreasonable application" clauses have independent meaning.

In the instant case, Sample claims he is entitled to habeas relief because the autopsy report should not have been viewed by the jury and that it was improper for the prosecutor to interject his personal views during closing argument.

With regard to the presentation of the autopsy report to the jury, in his direct appeal to the State courts Sample argued that the autopsy report was improperly introduced into evidence over the objection of his counsel. Although Sample did not explicitly indicate in his State court appeal that the report was viewed by the jury, the logical assumption here is that the jury viewed the autopsy report because it was admitted into evidence. This is especially true because Sample has alleged here that the jury viewed the autopsy report both during the prosecutor's closing argument and during jury deliberations. Accordingly, the Court finds that Sample has properly raised the autopsy issue in his pending petitition for writ of habeas corpus. Similarly, the record demonstrates that Sample's claim that he was deprived of due process when the prosecutor introduced his personal feelings during closing argument was exhausted in the State courts and is properly before this Court.

The factual background to this case is set forth in the Memorandum of the Superior Court filed in response to the direct appeal, where it is noted:

> [O]n December 29, 1998, Sample twice discharged a shotgun at a range of one hundred feet in the direction of the victim, thereby killing him. Sample claims that he acted upon the belief that the victim was going to kill Sample's friend, Brian Wade. A jury convicted Sample of third degree murder, and the court sentenced Sample to twelve to twenty-five years' imprisonment.

Turning to the merits of Sample's first claim, the Court notes at the outset that unlike state courts, federal habeas courts do not grant relief simply because a state trial judge made an evidentiary error. As the Supreme Court stated in *Estelle v. McGuire,* 502 U.S. 62 (1991): "it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67-8. Here, Sample claims that his Sixth Amendment right was violated when the jury viewed the autopsy report during the prosecutor's closing arguments and during jury deliberations. This argument is specious for two reasons. First, as Sample's post-conviction arguments to the State courts made clear, his counsel objected to the admission into evidence of the autopsy report. Second, it is axiomatic that once admitted into evidence, it was entirely proper for the jury to view that evidence during the prosecutor's summation and during its deliberations. "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993). Therefore, Sample's first argument is without merit.

Sample next argues that he was denied a fair trial when the prosecutor injected his personal feelings into his closing argument. Specifically, Sample objects to references made by the prosecutor regarding matters set forth in the autopsy report about which no testimony was presented. In the "Defendant's Concise Statement of Matters Complained of on Appeal" filed following the denial of post-conviction relief, Sample cited as objectionable the following excerpt from the prosecutor's closing argument:

6

He could have picked up a stone himself. He could have run and tackled him. But to crank off two rounds from a shotgun . . . No, no. There is no way. He did not believe at all. (at 444).

So now Phillip [the victim], who never had a gun, and now doesn't even have a stone, is completely unarmed, is shot in the back. And what does he (defendant) do? Calmly, just like that guy in "Hard to Kill" no doubt, racks another one. Pumps, cranks another one off. (at 445).

Third and last. Stand corrected when I said to you a minute ago, you will find it out for the first time downstairs. You haven't found it out yet because you haven't seen it yet, but I am going to show you in just a second. This Doctor Rozin's autopsy report, Commonwealth Exhibit 20, which the judge admitted into evidence, but I haven't gone through the whole thing yet. Some things in here that are in here you already heard the doctor testify to. But there are other things in here. And turning to Page 7, and I will just put it up on the TV. Can you all see that? While you are reading that and thinking about it, no doubt some of you are thinking, why is that so important. Maybe some of you have already figured out why. Those who may have not, again I will try to be of assistance . . . (at 447).

I can understand why my opponent is objecting. This hurts. This hurts her case real bad. (at 448).

At that point, even if you are willing to throw him a bone and give him the benefit of the doubt that he may have had some immature reaction to the situation in cranking off that first round, that was all he needed to do. (at 449).

As a general proposition, any actions of the prosecutor must be viewed in the context of the trial as a whole. *Moore v. Morton*, 255 F.3d 95 (3d Cir.2001). As the Court of Appeals stated in *Moore:* "The conduct of the trial, including closing arguments, is regulated under the sound discretion of the trial judge. But prosecutorial misconduct may 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' Such misconduct must constitute a " 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Id.* at 105 (internal citations omitted).

Viewing the prosecutor's closing argument in the context of the entire trial, it is clear that to the extent that he injected his personal views into his closing argument, such conduct did not constitute such fundamental unfairness that Sample was deprived of due process. Although the prosecutor improperly editorialized "[i] can understand why my opponent is objecting. This hurts. This hurts her case real bad," this stray remark was insufficient to deprive Sample of due process of law.

Because the issues which the petitioner raises here do not provide a basis for relief, the petition of Ambrose Junior Sample, II for a writ of habeas corpus will be dismissed and a certificate of appealability will be denied.

An appropriate Order follows.

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge

Dated: December 22, 2005

cc: All Parties and Counsel of Record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMBROSE JUNIOR SAMPLE, II, EC-2174, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:05-cv-1277 |
| | ) |
| SUPERINTENDENT DAVID | ) Judge Thomas M. Hardiman |
| DIGUGLIELMO, et al., | ) |
| | ) |
| Respondents. | ) |

### ORDER OF COURT

AND NOW this 22nd day of December, 2005, it is hereby ORDERED that the Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Ambrose Junior Sample, II is DENIED. The Report and Recommendation of Magistrate Judge Mitchell, dated October 28, 2005, is adopted as the opinion of the Court.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

The Clerk is to mark this case CLOSED.

BY THE COURT:

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge

cc: All Parties and Counsel of Record